Troy P. Foster #017229
Haley R. Carr #035804
**The Foster Group, PLLC**
902 W. McDowell Road
Phoenix, Arizona 85007
Tel: 602-461-7990
tfoster@thefosterlaw.com
hcarr@thefosterlaw.com
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Karen G. Hills, an individual,<br><br>Plaintiff,<br><br>v.<br><br>La Paz County, a subdivision of the State of Arizona; Diane Jones-Zakrajsek, in her individual capacity and official capacity; and the Hon. T.W. Carnevale, in her individual and official capacity,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>(Jury Trial Demanded) |

For her Complaint against La Paz County (the "County"), Diane Jones-Zakrajsek ("Ms. Jones-Zakrajsek"), and the Hon. T.W. Carnevale ("Judge Carnevale") (collectively, the "Defendants"), Plaintiff Karen Hills ("Ms. Hills" or "Plaintiff") alleges as follows:

**Parties and Jurisdiction**

1. At all times relevant to this Complaint, Ms. Hills resided in and was a citizen of La Paz County, Arizona.

2. The County is a subdivision of the State of Arizona.

3. Upon information and belief, Judge Carnevale resides in and is a citizen of La Paz County, Arizona.

1

4. Upon information and belief, Ms. Jones-Zakrajsek resides in and is a citizen of La Paz County, Arizona.

5. At all times relevant to this Complaint, Ms. Hills worked for the County at the Quartzsite Justice Court.

6. The Quartzsite Justice Court is a part of the La Paz Justice Court system and is located in La Paz County.

7. Ms. Hills was a County employee from approximately October 3, 2017 to January 28, 2021.

8. At all relevant times, Ms. Hills was a member of Judge Carnevale's courtroom staff.

9. At all relevant times, Ms. Hills was employed as a Court Clerk.

10. Ms. Jones-Zakrajsek was the Chief Clerk Judge Pro Tem of the Quartzsite Justice Court and Ms. Hills' direct supervisor.

11. Judge Carnevale supervised the Quartzsite Justice Court's staff as a whole.

12. Ms. Hills brings claims pursuant to 42 U.S.C. § 1983, in addition to State laws.

13. On February 12, 2021, Ms. Hills sent a Notice of Claim to Defendants pursuant to A.R.S. § 12-821.01 outlining her State and federal claims alleged herein.

14. This Court has original subject matter jurisdiction over Ms. Hills' § 1983 claims based on 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Ms. Hills' state law claims under 28 U.S.C. § 1367 because the state law claims are so related to her § 1983 claims that they form part of the same case or controversy, and they derive from a common nucleus of operative facts.

15. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the claims alleged in the Complaint arose in this District.

**The Assault, the Report, and the Beginning of the Pattern**

16. Less than one year after she started working for the County, Ms. Hills had a physical altercation with Ms. Jones-Zakrajsek.

17. On or around August 8, 2018, Ms. Hills was filing some documents regarding a defendant that had two open cases.

18. Ms. Hills was told by a co-worker to put a document in one of the defendant's files, but Ms. Hills stated that she believed it was the wrong file.

19. Ms. Jones-Zakrajsek started to appear frustrated with Ms. Hills for being unable to find the correct file.

20. Ms. Jones-Zakrajsek became extremely condescending towards Ms. Hills when speaking to her.

21. Ms. Jones-Zakrajsek then grabbed and pulled Ms. Hills' hand several times to direct Ms. Hills' attention toward a certain file and/or document.

22. Ms. Jones-Zakrajsek's unwanted physical contact, coupled with condescension and belittling, caused Ms. Hills to become upset.

23. Ms. Hills told Ms. Jones-Zakrajsek she was going to leave.

24. Ms. Jones-Zakrajsek responded by stating, "Good. Leave."

25. Ms. Hills could not inform Judge Carnevale about the incident at the time because she was on the bench.

26. Ms. Hills instead sent Judge Carnevale a text message from the parking lot before she left, informing her that she was leaving.

27. Ms. Hills was disciplined the next day before getting a chance to discuss what happened with Judge Carnevale.

28. When Ms. Hills arrived to work the day following the incident, Ms. Jones-Zakrajsek asked her to come speak in with her in Ms. Jones-Zakrajsek's office.

29. Ms. Hills asked for Judge Carnevale to be present, but Ms. Jones-Zakrajsek told her that Judge Carnevale wanted Ms. Jones-Zakrajsek to speak with her.

30. Ms. Hills asked for a different third-party witness to be present for the meeting, but Ms. Jones-Zakrajsek did not allow it.

31. Ms. Jones-Zakrajsek presented Ms. Hills with a documented verbal warning.

32. Ms. Hills tried to discuss what happened the previous day from her perspective, but Ms. Jones-Zakrajsek did not give her a chance.

33. At the end of the meeting, Ms. Jones-Zakrajsek said "We'll just say it's hormones."

34. Following this incident, Ms. Hills told Judge Carnevale that if Ms. Jones-Zakrajsek ever put her hands on Ms. Hills again, she would report her to Human Resources ("HR").

35. For the next two years, there were multiple instances of Ms. Jones-Zakrajsek getting upset at Ms. Hills and then belittling and condescending her, often in front of co-workers.

36. Ms. Hills would report each incident, but no action would ever be taken against Ms. Jones-Zakrajsek.

37. Ms. Hills was blamed for most, if not all, of the incidents.

38. Then, on or around October 20, 2020, Ms. Jones-Zakrajsek and Ms. Hills had another verbal dispute that escalated to unwanted physical contact.

39. That day, Ms. Jones-Zakrajsek ended up grabbing Ms. Hills by the shoulder and arm twice before "marching" Ms. Hills to Judge Carnevale's chambers.

40. Ms. Hills reported that Ms. Jones-Zakrajsek physically grabbed and pulled her to Judge Carnevale's chambers.

41. Judge Carnevale responded that "[Ms. Jones-Zakrajsek] is just 'animated.'"

42. Ms. Hills subsequently reported the incident to HR.

**Ms. Hills Reports Violations of State Law and Other Matters of Public Concern**

43. First, on or around October 15, 2020—just days before the October 20th incident—Ms. Hills reported to Judge Carnevale that Ms. Jones-Zakrajsek had also assaulted other co-workers by hitting them on the head with files and grabbing and pushing them.

44. Judge Carnevale never addressed the substance of that complaint.

45. Second, Ms. Hills reported concerns about Diane Ellis ("Ms. Ellis") (Court Clerk) being allowed to falsify her hours because she was friends with Judge Carnevale.

4

46. Ms. Ellis was habitually late to work and often took extended lunches with Judge Carnevale.

47. The staff regularly discussed the lax timekeeping rules that were applied to Ms. Ellis for two reasons: (1) it was open and pervasive; and (2) the rest of the staff was held to the strictest of timekeeping standards, and other employees were written up for falsifying hours.

48. At all relevant times, Ms. Ellis was personal friends with Judge Carnevale.

49. It was clear to Ms. Hills that Ms. Ellis got a "free pass" because of her personal friendship with Judge Carnevale.

50. When Ms. Hills reported concerns about Ms. Ellis' timekeeping to superiors, she was instructed that if Ms. Ellis was friends with Judge Carnevale, "no questions are to be asked."

51. Ms. Hills reported it anyway.

52. Judge Carnevale responded by telling Ms. Hills that she could not go to HR.

**The County and Judge Carnevale Retaliate Against Ms. Hills**

53. On or around November 19, 2020, Ms. Hills was summoned to a meeting with Judge Carnevale and Ms. Jones-Zakrajsek.

54. Judge Carnevale made it clear to Ms. Hills that she did not want her to return to her courtroom staff.

55. However, rather than terminating Ms. Hills, Judge Carnevale instead levied against her a series of adverse employment actions: Judge Carnevale (1) moved Ms. Hills' desk; (2) changed her lunch hour; (3) moved her parking spot; (4) told Ms. Hills to stop speaking in Spanish at work; (5) prohibited Ms. Hills from making up time, even though it was standard practice; and (6) required Ms. Hills to request time off two weeks in advance, even though Judge Carnevale knew Ms. Hills had medical issues.

56. Judge Carnevale scolded Ms. Hills for reporting her concerns to HR.

57. Ms. Jones-Zakrajsek told Ms. Hills that her discipline could have been much worse because they could have written her up for "at least a dozen" things.

58. Instead, Ms. Jones-Zakrajsek and Judge Carnevale took adverse action only after, and because, Ms. Hills reported her concerns to HR.

59. Judge Carnevale informed Ms. Hills that the changes were simply "for cross-training purposes."

60. That reasoning falls short, however, when one considers that they summoned Ms. Hills to the meeting to inform her that she inappropriately reported her concerns to HR and that she could have been written up for a dozen things before taking adverse action.

61. The timing itself demonstrates pretext.

### Ms. Hills Reports Another Matter of Public Concern: Unlawfully Incarcerated Defendants

62. In January 2021, just days before being terminated, Ms. Hills raised another matter of public concern.

63. Ms. Hills discovered that due to processing errors within the Court, two individuals were detained over the holidays without justification.

64. If the error did not get corrected, it would likely affect many individuals in the future.

65. Ms. Hills reported her concern about the unlawful detention to Ms. Ellis.

66. Ms. Ellis dismissed Ms. Hills' concerns on two fronts.

67. First, Ms. Ellis told Ms. Hills not to raise the issue any further.

68. Second, Ms. Ellis laughed and said, "Well, they are criminals anyway, right?"

69. In fact, the defendants were not criminals because their cases had not yet been adjudicated.

70. This report was apparently the last straw for Judge Carnevale and the County.

### The County and Judge Carnevale Retaliate Again

71. Shortly after raising the issue, Judge Carnevale and Ms. Jones-Zakrajsek placed Ms. Hills on administrative leave and notified her of the County's intent to terminate her employment.

72. Ms. Hills reached out to HR for assistance.

73. HR informed Ms. Hills that "the Judge can do what she wants."

74. Ms. Hills was provided what was labeled a "pre-termination" hearing via telephone.

75. However, Judge Carnevale told Ms. Hills during the recorded conversation that it did not matter what she said because Judge Carnevale had already decided to terminate her.

76. Judge Carnevale did not let Ms. Hills respond to all of the allegations against her.

77. Judge Carnevale terminated her during that phone conversation.

### Allegations Concerning Damages

78. As a result of Defendants' actions, Ms. Hills has become physically ill. She experiences nausea, headaches, and further exacerbations to her existing medical conditions.

79. Ms. Hills has suffered physical ailments and severe emotional distress.

80. The comments and circumstances surrounding Ms. Hills' termination have damaged her reputation and made finding replacement employment difficult.

81. Ms. Hills' treatment necessitates a therapist and psychiatrist for the foreseeable future.

82. Ms. Hills also suffers from sleep deprivation and insomnia as a result of Defendants' conduct.

83. Ms. Hills is entitled to general and actual compensatory damages, punitive damages, lost wages, attorneys' fees and costs, and pre- and post-judgment interest on the award.

### LEGAL CLAIMS

### Count One: First and Fourteenth Amendment Violations (42 U.S.C. § 1983)
### (Against All Defendants – All Capacities)

84. Ms. Hills re-alleges and incorporates by reference the allegations in Paragraphs 1–83.

85. At all relevant times, Ms. Jones-Zakrajsek was acting under color of State law.

86. At all relevant times, Judge Carnevale was acting under color of State law.

87. In her role, Ms. Jones-Zakrajsek had authority and discretion to take adverse action against Ms. Hills and did take such action.

88. In her role, Judge Carnevale was the final decision-maker with respect to adverse action taken against Ms. Hills, and she took such action.

89. In their respective roles, Judge Carnevale and Ms. Jones-Zakrajsek were charged with ensuring the workplace was free from adverse actions for the proper exercise of speech, the violation of which infringes upon an employee's First Amendment rights under the United States Constitution. Judge Carnevale also had a duty to ensure that County employees' rights to due process were not violated.

90. As the final decision-maker, Judge Carnevale established the County's policies and customs—either directly or by condoning the acts of subordinates.

91. Judge Carnevale took action against Ms. Hills in her own right and condoned the acts of her subordinates by not addressing Ms. Hills' many protected complaints.

92. Ms. Hills' complaints to Ms. Jones-Zakrajsek and Judge Carnevale about (1) Ms. Jones-Zakrajsek assaulting County employees; (2) Ms. Ellis falsifying her hours at the taxpayers' expense; and (3) the County incarcerating defendants without justification all concerned Ms. Hills' good faith belief that the rights of County employees, the taxpayers, and detained defendants were being violated.

93. Ms. Hills' complaints raised matters of public concern.

94. Ms. Hills had the right to voice matters of public concern, as protected by her First Amendment rights under the United States Constitution.

95. Defendants took adverse action against Ms. Hills after she raised these complaints pursuant to a policy/custom of prohibiting employees from voicing matters of public concern.

96. Ms. Hills had a due process right to an unbiased and objective pre-termination hearing.

97. Judge Carnevale told Ms. Hills that it did not matter what she said during her pre-termination hearing because she would be getting terminated regardless.

98. Because Ms. Hills' termination was a foregone conclusion, Judge Carnevale violated Ms. Hills' due process guaranteed by the Fourteenth Amendment.

99. All of Ms. Hills' rights, as articulated above, were clearly established and recognized at the time of the adverse action.

100. Judge Carnevale and Ms. Jones-Zakrajsek abused their respective positions given to them by the government while acting under the color of State law.

## Count Two: Intentional Infliction of Emotional Distress
## (Against Ms. Jones-Zakrajsek in Her Individual Capacity)

101. Ms. Hills re-alleges and incorporates by reference the allegations in Paragraphs 1–100.

102. Ms. Jones-Zakrajsek repeatedly engaged in unwanted physical contact with Ms. Hills.

103. Ms. Hills repeatedly instructed Ms. Jones-Zakrajsek not to touch her, but Ms. Jones-Zakrajsek did anyways.

104. Throughout Ms. Hills' employment, Ms. Ms. Jones-Zakrajsek would belittle and talk down to Ms. Hills at any given opportunity.

105. The unwanted physical contact culminated with Ms. Jones-Zakrajsek grabbing Ms. Hills by the shoulder and marching her to Judge Carnevale's chambers.

106. Ms. Jones-Zakrajsek's conduct was extreme and outrageous. This is especially true given that the repeated unwanted physical contact occurred in the workplace on more than one occasion.

107. Upon information and belief, Ms. Jones-Zakrajsek acted with the intent to cause Ms. Hills emotional distress. Alternatively, Ms. Jones-Zakrajsek acted with a reckless disregard as to whether emotional distress would result from her repeated unwanted physical contact.

108. Ms. Hills has suffered severe emotional distress from Ms. Jones-Zakrajsek's conduct.

**Count Three: Violation of Arizona Employment Protection Act (A.R.S. § 23-1501)**
**(Against All Defendants – Official Capacities)**

109. Ms. Hills re-alleges and incorporates by reference the allegations in Paragraphs 1–108.

110. Ms. Hills reported to Judge Carnevale that Ms. Jones-Zakrajsek had assaulted her and other County employees multiple times, in violation of State law.

111. Ms. Hills believed at the time she reported the assaults that Judge Carnevale had the authority to investigate her claims.

112. Instead of investigating the claims and disciplining Ms. Jones-Zakrajsek, Judge Carnevale terminated Ms. Hills for reporting the violation of State law.

**PRAYER FOR RELIEF**

**THEREFORE**, Plaintiff respectfully requests the following relief:

A. A judgment in her favor against Defendants;
B. Pre- and post-judgment interest on the award;
C. Compensatory damages;
D. Punitive damages;
E. Reasonable attorneys' fees and costs; and
F. All other appropriate equitable relief.

**RESPECTFULLY SUBMITTED** this 21st day of May, 2021.

                **The Foster Group, PLLC**

                */s/* Troy Foster
                Troy Foster
                Haley Carr
                902 W. McDowell Road
                Phoenix, Arizona 85007
                *Counsel for Plaintiff*